al., et al., et al., et al., et al., et al., et al., et al., et al., et al., et al., brexit-burger girls and other things. Okay, return visit from Mr. Peacock. Welcome back. Good morning, your honors. It's good to be here again this morning, your honor. Thank you. May it please the court, counsel, your honor. My name is Jack Peacock and I represent Mr. and Mrs. Thompson, the appellants in this case who were the plaintiffs in the lower court. The court, the trial court decided this case by summary judgment, dismissed the case, and we have appealed to this court. To begin with, I'd like to go through some of the relevant facts. Mr. and Mrs. Thompson purchased the home that's the subject of this case back in 2006, and they moved themselves and their children into this property. In connection with purchasing the property, they borrowed $186,000 toward the purchase from Countrywide, which is now Bank of America. We pretty well know the underlying facts, so why don't you go ahead and just apply the facts to whatever law we need to apply. All right. Thank you, your honor. Well, I want to focus on the issue of waiver today. As the court will recall the facts, during the course of this loan, Mr. and Mrs. Thompson fell on hard times. They were up to date on their payments, but they wanted to try to get some relief with Bank of America. And so Bank of America said to Mr. and Mrs. Thompson, well, we could do a loan modification, but you're going to have to be behind on your payments. We can't do a loan mod without your being behind on your payments. Let's stop right there. Do you have any problem with that as a matter of whether that was good business judgment or not? Do you have any problem with that part of it as a matter of law? Well, I think what that does is, and I know the court has probably heard this a hundred times over the last six years from homeowners. And a lot of those times, thanks to you, right? Several times. We start with all the sympathy for your clients. Pardon me, your honor? We have all the sympathy for your clients. Thank you, your honor. But we still have to rule sometimes. That's right. Thank you, your honor. Well, the problem is, is it's very much like the criminal issue of entrapment. As the court well knows, whenever you have an entrapment situation, well, the defendant gets some relief because of that. But in our situation, there is no relief, and there should be. So that creates an opportunity, let's say, for a good lawyer to say, wait a minute, this is not right. That's number one. So what legal theories do we have here that could remedy this wrong? And one of the remedies that just jumps out in this case is a waiver. Now, why is waiver applicable? Well, for the simple reason that, as you recall from the transcript, over 12 times, 12 times over three years, the lender said, we're going to post this property for foreclosure. They did post it for foreclosure. Let's go back, though, Mr. Peacock. I haven't heard an answer to my question. Maybe you gave it, and I didn't understand it. Stopping at the point at which they said, we want some relief, and the bank says, no, we can't do that to you, you're not in arrears. As a matter of law, again, whether it was nice or whether it was good business judgment is beside the point. As a matter of law, was there anything wrong with that response from the bank at that point? At that point, I don't think so. As a matter of law. And their legal position didn't change. Right. At that point, it didn't. I believe that the problem with that is telling them that they needed to be behind on the loan in order to qualify for the relief that they needed. What answer was the bank supposed to give if the bank had decided not to give any relief? A deal's a deal. Here's what you're supposed to pay. If the bank had made that business decision, wasn't it more honest for the bank to say, we can't give you any relief unless and until you're behind? It seems to me that that was more full disclosure on the bank's part about what its position was instead of laying behind the law. Well, the reality is that they could have done a loan modification without them being behind. And that goes to a misrepresentation in my mind. They don't have to put these people behind in order to qualify for loan modifications. There's all kinds of loan modifications. There's the HAMP, there's the HOPE, there's the in-house loan modifications. They don't have to put them in arrears to do that. So I want to make sure I understand, Mr. Peacock. Your chief allegation as regards Bank of America is that their representatives made false representations during the course of the loan modification process. Am I right? They certainly did that, but I wouldn't characterize it as my chief allegation. But yes, it's a clear misrepresentation, no question about that, of what the facts are. Well, if that's not your chief, I'm going to encourage you to get to what the government is of your claim against them, number one. And then number two, what evidence is there in the record to support that? Yes. And I can jump right on that. Since the lender said, well, first of all, posted the property for foreclosure, accelerated the loan, posted the property for foreclosure, because they were in arrears. And then said, well, we need more time to review your situation for a loan modification, so we're going to postpone that foreclosure. Is that a waiver? Did they waive their right to foreclose? I thought the deed of trust said that they didn't waive. Well, I'm coming to that. But first of all, and of course, where I'm going with this, just to let you know, I'm aligning this case with Kobernik, which you're well aware of, a Fifth Circuit case where the court did find waiver, even though there was a non-waiver clause in the legal documents. And it's clear. I mean, Corbin on Contracts says that that's an anomaly to have a non-waiver clause because a party can waive the non-waiver clause at any time. And so that basically doesn't make sense to have a non-waiver clause whenever you can still waive. But the issue here is, and where it aligns with Kobernik, is every time they accelerated, posted the property for foreclosure, and then postponed it, did they not waive their right to foreclose on that date? Sure they did. There's no question. In my mind, that's undisputed. And that happened 12 different times over three years. Why is that waiving their right to foreclose? It's a temporary waiver. It's not a permanent waiver. We're talking about... They decided not to foreclose. Right. Does that give up the right to foreclose? Well, okay. Under Texas state law, whenever a party waives a right that it has, even temporarily, then under the rules, under the case law, and we quoted several cases that say this, that the lender's duty then is to say, okay, we're going to require strict performance, but we have to give you a reasonable opportunity to get back into compliance. That's where we're going with this. And that's what should have happened here. They never gave them that opportunity, even though they clearly waived it 12 times. What did they do to deny them an opportunity? Well, they set the property for foreclosure again after calling the entire note. That doesn't give them a reasonable opportunity to get back into compliance. Had this happened at the very beginning, then it would not... If Bank of America would have said to the Thompsons, all right, we're going to require strict compliance, but we're going to give you a reasonable time to get this back up to date and in compliance. That's not that hard, but after 12 times of doing this over three years, now we've got a bigger situation of trying to get back in compliance, but it's even then it's not impossible. There's loan modifications, forbearance possibilities. There's a number of ways that that can be done and should have been done, but it wasn't done in this case. Instead, what they did was, after the 12th time, they set it for foreclosure. They're in review. Let me add this. At this time, Bank of America was under that consent judgment that was rendered in Washington, D.C. in April of 2012. Under that consent order, they couldn't do this. They couldn't have someone in a loan modification review and then foreclose. As a matter of fact, that has... We can't enforce it in this court. That's the problem, or in the lower courts in Texas. The only way that that could be enforced, well, first of all, you don't have a private right of action under that consent judgment. The only way that it could be enforced is if one of the parties to that consent judgment, the state of Texas or one of the other states, seeks to enforce that. But anyway, that has been incorporated under the Consumer Finance Bureau regulations starting in January of 2014. But that's too late for the Thompsons because they got foreclosed before that. But the issue here is that there is a... I don't know how else to describe it. The trial court focused on the disjunctive part of the definition of waiver by focusing on the part of an intentional relinquishment of a known right. But the rule, as the court knows, and as cited in the Kobernik case, it's not just that. But if there's conduct inconsistent with that right, the conduct that's inconsistent is the fact that they continually set it for foreclosure and then canceled it, or postponed it. Set it for foreclosure. It's entirely inconsistent with the right that they had to foreclose. So how would we write that if we were to agree with your general theory and we were writing a published opinion on that? What's... Because this would come up again and again in a lot of cases. What's the rule that we would announce that once you give up the right to foreclose once or twice or... How would we say it? Well, number one... If you were writing it for us, how would we say it? Number one, I would say it's a fact issue on this scenario as to whether this conduct was inconsistent with the known right. And number two, as far as writing an opinion, I would say that... I would just align with the cases that already exist in the state of Texas, which I've cited in the brief, and in particular the Laredo Hides case, where there was a delay. And so the court stated that, well, all right, we have a waiver here, a temporary waiver. So what we're... The rule is that the party against who the waiver runs has to say, all right, now we're going to require strict compliance and give the other party a reasonable opportunity to cure or to get into compliance. That's not unreasonable. Okay. Your initial time has expired, Mr. Capicot. Thank you. Thank you, Your Honor. Mr. Anderson? Good morning, Your Honors. May it please the Court? Nathan Anderson on behalf of Bank of America and for U.S. Bank. Briefly, the real issue in this case is whether or not the bank has waived its right to foreclose. And what the record shows in this matter is that the Thompsons became a default on their loan. The bank then proceeded to post that property for foreclosure. During that time, the Thompsons were seeking a loan modification from the bank. The bank reviewed that modification request. It was ultimately denied. The Thompsons then appealed that decision. It was ultimately denied again. The Thompsons appealed it for a second time. And then it was posted for foreclosure during that time on 12 separate occasions. It's undisputed that the Thompsons received notice of the sale and that they knew that they were in default and that they knew the property was posted for sale. The bank continued to work with the Thompsons up until the last hour before it foreclosed on the property in January of 2013. Notably, there's no evidence anywhere in the record that the Thompsons attempted to make any sort of payment after they defaulted. In fact, the Thompsons' declaration where they state that the bank told them they had to quit making payments in order to be qualified for a loan modification, Bank of America provided summary judgment evidence that the Thompsons continued to make payments up until January 27, 2010, some two months after the bank allegedly told them they couldn't get a loan modification unless they were in default. As of today, the loan was paid to December 2009. So at this point, it's nearly four-plus years delinquent. The foreclosures happened. The Thompsons are still in the house. The issue of waiver, opposing counsel is correct that waiver is a matter of intent and there's three elements to it. Only the third element, actual intent to waive that right or conduct inconsistent, is what's at issue in this case. Opposing counsel doesn't argue that there was actual intent that the bank waived its right to foreclose. Rather, the argument is, was their conduct inconsistent with posting that property for foreclosure? I would submit to the court that over the course of three years reviewing the Thompsons for a loan modification, the bank continued to post that property for foreclosure. That's not disputed. That indicates that the bank was not waiving their right to foreclose. Opposing counsel brought up the Kobernik case, which is an unpublished opinion from this court where the court held that in some instances, an anti-waiver provision like what's found in the deed of trust here can be waived. The deed of trust here in this matter says that any forbearance by the lender, defined as Bank of America, is not a waiver of the right, any other rights under this security instrument. Kobernik is distinguishable from this case. In fact, this court on March 15th examined the Kobernik in a case entitled Page, which was cited in our FRAP 28J letter. There the Page court examined Kobernik and said it's distinguishable because that involved, Kobernik involved a lender that had refunded tax escrow payments to a borrower over a span of four years, and then at the end of that time period, the lender unilaterally declared the borrower in default, then proceeded to foreclose on the property. There was an anti-waiver provision in that security instrument, but this court held that in some instances, under Texas law, that could be waived. To touch on the Laredo Hides case that's cited in the brief, that's distinguishable as well. That case involved an Article II sale of goods and cover by a seller of cattle hides, not real property. What happened in that case is the seller, the terms of the contract recalled for payment in cash at the time of purchase, and over a prior course of dealing, the parties would give payment in cash at the time of delivery of these cattle hides. Ultimately things went south. The purchaser tendered, forgot to bring a check when he tried to pick up these cattle hides. The seller then two days later said, if you don't have me cash by 5 o'clock this afternoon, I'm never going to sell you another cattle hide. Breach of contract claim arose, the court looked at it and said, the seller had waived his right to demand payment in cash at the time of sale through prior course of conduct and dealing. Now notably, the prior course of conduct and dealing, that's applicable to Uniform Commercial Code. We're dealing not with the Uniform Commercial Code. We're dealing with Contract Law Chapter 51 of the Property Code. So Laredo is distinguishable on that ground. It's undisputed that the Thompsons were considered for a loan modification over the span of three years. It's also undisputed they were ultimately informed in writing that their modification was denied. Notably, on page 11 of our brief in footnote 9, there is a case, Veltman v. Hoffman, which specifically held, and it's directly on point here, quote, we know of no case holding that a lien holder who, at the request of the debtor, postpones a nonjudicial foreclosure sale in order to afford the debtor an opportunity to avoid loss of his land is to be penalized by then being deprived of his right to foreclose. It's unfortunate in any circumstance when a borrower becomes in default and is facing foreclosure. The borrower asked for a loan modification. The bank provided them a review of that modification. The borrower was notified that it was posted for a foreclosure sale, and the borrower requested on 13 separate occasions, please don't foreclose. The bank said, okay, we won't foreclose. We're going to continue reviewing you for a loan modification. That cannot be a waiver. The final issue that I briefly wish to touch on is whether or not the district court properly sustained Bank of America's objections to some of the summary judgment evidence offered in response. There are three pieces of evidence that the Thompsons offered in response to the bank's summary judgment evidence. The first is a series of declarations that are from a class action certification out of a district court in Massachusetts. I briefly want to talk on those declarations. The bank objected to those on grounds of relevancy because in the 80 pages of these declarations they were offered to show that the bank had a character and habit of lying to borrowers and doing mass denials of loan modifications. Nowhere in those 80 plus pages of declarations is there any sworn testimony that those declarants have any personal knowledge of the Thompsons' account, the Thompsons' loan modification process, or the bank's decision to ultimately foreclose on that house. We objected to those also on the grounds that under 403B of the Federal Rules of Evidence, they were offered solely to show conformance with character and prior bad acts. That is excluded from evidence. You can offer such type of character evidence to show lack of motive, lack of notice, or opportunity, but not to show conformance with that prior bad act. The second piece of summary judgment evidence that was struck was a telephone conference log that was offered by the Thompsons. In that, it was unauthenticated and it doesn't state who the calls were to or who the calls were from or what phone numbers were called. We objected to that because it was unauthenticated and a precondition to admissibility is that the evidence has to be authenticated. There is a line of case law that says, actually the Federal Rules of Evidence state that in certain instances, a telephone conversation log can be self-authenticating as long as the declarant states this was placed to a certain number at a certain time and it was made to this business. Nowhere in this telephone conversation log are there any statements to those facts, therefore it was properly struck. Based on the foregoing, it's our contention that the summary judgment against the Thompsons claims in all things was correct. Very briefly, I would like to point out that Justice Smith, I believe you were getting to possibly a statute of frauds issue. If the bank had made that allegation that you have to be delinquent in order to get a loan modification, even if that could be inferred as a directive to a borrower to quit making their payments, this court examined that issue in Martin's VBAC Home Loan Servicing and held that representations that go against a written loan agreement have to be in writing in order to be enforceable under the statute of frauds. For those reasons, we respectfully request that the grant of summary judgment and the sustaining of Bank of America's objections to Mr. Thompson's summary judgment evidence be in all things affirmed. Thank you. Thank you, Mr. Anderson. Mr. Peacock, you saved time for both. Thank you, Your Honor. Well, first of all, waiver is not subject to the statute of frauds. There's a Texas Supreme Court case that discusses that, and if the court would like, I can send the court a letter brief on that particular issue. But let me respond to his comments. First of all, about payments not being made, he didn't tell you that the Thompsons are making payments into the registry of the court every month while this case is pending. So I mean, it's not like they're not making payments. They are. But the bottom line here is that we've cited a litany of cases about waiver, and this case does line up with Coburnick. The only difference is that, well, there's some factual differences, but Coburnick involved a four-year waiver. This case involves multiple waivers aggregating three years. So I don't see how that the bank can say that we don't at least have 12 temporary waivers here, and in the aggregate, a three-year time period that would and should, under the law, enable the homeowners to at least have the benefit of the bank saying, all right, we're going to require strict compliance now, and we're going to give you a reasonable time to get this contract into compliance. That's what waiver's all about, and in my mind, this is clear that that's what we have here and certainly the family is willing to make whatever kind of arrangement that's reasonable under the circumstances to resolve this matter and stay in their home and move on. And we would ask the court to reverse the trial court, at least on the issue of waiver, because it is a fact issue, send it back for trial, and hopefully this family can get this matter resolved with the Bank of America. All right. Thank you, Mr. Peacock. Your case is under submission.